1

2

3

4                                  UNITED STATES DISTRICT COURT

5                                 NORTHERN DISTRICT OF CALIFORNIA

6

7    In re YASUYOSHI ANAHARA,                    Case No.  22-mc-80063-JCS

8                      Applicant.                **ORDER REGARDING APPLICATION
                                                 UNDER 28 U.S.C. § 1782**

9                                                Re: Dkt. No. 1

10

11

12

13   **I.       INTRODUCTION**

14           Yasuyoshi Anahara filed an ex parte application under 28 U.S.C. § 1782 for an order

15   authorizing limited discovery from Google, LLC regarding an allegedly defamatory review posted

16   on his restaurant's business profile.  For the reasons discussed below, the application is

17   GRANTED IN PART, without prejudice to any recipient of a subpoena or other interested party

18   moving to quash.

19   **II.      BACKGROUND**

20           Anahara is the sole proprietor of a restaurant in Japan, which is located in a building

21   owned by his mother.  Anahara Decl. (dkt. 1-1) ¶¶ 1–2, 11.  On November 10, 2021, an

22   anonymous user with the display name かなぶん ("Kanabun"), which was later changed to ぺん

23   ぎん ("Penguin"), left a one-star review of the restaurant on the restaurant's Google Maps profile.

24   *Id.* ¶ 10.  The review accuses Anahara and his wife of forcing his mother out of her home and into

25   a care facility, stealing the restaurant and an attached home from his mother, not paying rent that

26   was promised after his mother "lent her son the store that she was leasing to someone else," and

27   "taking back the title document and registry from the person who was entrusted with it."

28   Katsurada Decl. (dkt. 1-3) Ex. A (English translation from Japanese).

*United States District Court*
*Northern District of California*

1     Anahara suspects that his mother's brother—who had previously borrowed a substantial

2     sum of money from his mother and held her title document to the building—wrote the review, or

3     that it was someone connected with his mother's brother.  Anahara Decl. ¶¶ 12(iii), 15.  Anahara

4     admits that he and his wife were involved in the decision to move his mother to a care facility, but

5     states that they did so only at the urging of her doctor after her dementia caused her to endanger

6     herself and others, and despite their initial unwillingness to do so.  *Id.* ¶ 12(i).  He asserts that the

7     reference to the restaurant having been rented to someone else is false (it was vacant when his

8     mother asked him to operate it to help ameliorate her financial distress as result of losing rent from

9     the previous tenant), as is the reference to failure to pay promised rent (there was no agreement to

10    pay rent, and he and his wife have provided more financial support to his mother than the previous

11    tenant's rent).  *Id.* ¶ 12(ii).  Anahara asserts that he had his mother's brother return the title and

12    registry documents (as well as the money he had borrowed) at his mother's request, and after her

13    brother had refused her direct requests to do so.  *Id.* ¶ 12(iii).  He states that his mother still owns

14    the building, and that the accusation that he and his wife stole the house and store is false.  *Id.*

15    ¶ 12(iv).

16          The review has negatively affected the restaurant's business.  *Id.* ¶ 13.  Anahara intends to

17    bring civil lawsuits for reputational torts under Japanese law, but cannot do so without first

18    identifying who wrote the review.  *Id.* ¶¶ 16–18.

19    **III.    DISCUSSION**

20          **A.    Legal Standard**

21          Section 1782 provides, in relevant part:

22               The district court of the district in which a person resides or is found
               may order him to give his testimony or statement or to produce a
23               document or other thing for use in a proceeding in a foreign or
               international tribunal . . . .  The order may be made . . . upon the
24               application of any interested person . . . .

25    28 U.S.C. § 1782(a).  Section 1782 permits district courts to authorize discovery where the

26    following requirements are met: "(1) the person from whom the discovery is sought 'resides or is

27    found' in the district of the district court where the application is made; (2) the discovery is 'for

28    use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a

1    foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d

2    922, 925 (9th Cir. 2019) (citations omitted).

3         A litigant in a foreign action qualifies as an "interested person" under § 1782. *See Intel*

4    *Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Further, § 1782 does not

5    require that a formal proceeding in the foreign jurisdiction is currently pending, or even imminent;

6    rather, a court may permit discovery under Section 1782 so long as a "dispositive ruling" by the

7    foreign adjudicative body is "within reasonable contemplation." *In re Hoteles City Express,* No.

8    18-mc-80112-JSC, 2018 WL 3417551, at *2 (N.D. Cal. July 13, 2018) (quoting *Intel*, 542 U.S. at

9    256).

10        Even if the basic requirements of § 1782 are satisfied, however, a district court has wide

11   discretion in deciding whether to permit discovery under § 1782. *Intel*, 542 U.S. at 260–61. In

12   exercising its discretion, a district court should consider the following factors: (1) whether the

13   "person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature

14   of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of

15   the foreign government or the court or agency abroad to U.S. federal court judicial assistance,"

16   (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or

17   other policies of a foreign country or the United States," and (4) whether the request is "unduly

18   intrusive or burdensome." *Id.* at 264–65.

19        "A district court's discretion is to be exercised in view of the twin aims of § 1782:

20   providing efficient assistance to participants in international litigation and encouraging foreign

21   countries by example to provide similar assistance to our courts." *In re Nat'l Ct. Admin. of the*

22   *Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015)

23   (citing *Schmitz v. Bernstein Libehard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)). The party

24   seeking discovery need not establish that the information sought would be discoverable under the

25   foreign court's law or that the U.S. would permit the discovery in an analogous domestic

26   proceeding. *See Intel*, 542 U.S. at 247, 261–63.

27   **B.    The Statutory Requirements Are Met**

28        Anahara's application meets the minimum statutory requirements under § 1782. Anahara

3

United States District Court
Northern District of California

1    has established that he is an "interested person" seeking "documents or things" for use in a foreign

2    proceeding.  *See* Anahara Decl. ¶ 18 ("Once the true identity . . . is revealed, I intend to and will

3    file civil lawsuits against all of the Anonymous Individuals for damaging the reputation of the

4    Clinic.").  Google is headquartered in Mountain View, California, in this district.  The Court

5    therefore has authority to issue this subpoena.

6    ### C.    The First Discretionary Factor

7    Courts next consider the four discretionary *Intel* factors in deciding whether to grant the

8    application.  The first discretionary factor considers whether the application seeks discovery from

9    participants in the foreign proceeding.  *Intel*, 542 U.S. at 247.  "[N]onparticipants in the foreign

10   proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence,

11   available in the United States, may be unobtainable absent § 1782(a) aid."  *Intel*, 542 U.S. at 264;

12   *see also In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *3 (N.D.

13   Cal. Mar. 24, 2016) ("[T]he key issue is whether the material is obtainable through the foreign

14   proceeding." (citation omitted)).  As such, the first discretionary factor favors discovery against

15   nonparticipants in foreign proceedings.  *Cf. In re Varian Med. Sys.*, 2016 WL 1161568, at *4

16   (finding that the First *Intel* factor weighs heavily against seeking discovery from participants in

17   foreign tribunals).  Anahara's Japanese attorney asserts that "Google is not, and will not be, a

18   party or participant to the anticipated Japanese civil lawsuits," and that the documents are held in

19   the United States and are outside of the reach of Japanese courts' jurisdiction.  Kawamura Decl.

20   (dkt. 1-2) ¶ 13.  This factor therefore weighs in favor of the application.

21   ### D.    The Second Discretionary Factor

22   The second discretionary factor "focuses on whether the foreign tribunal is willing to

23   consider the information sought." *In re Varian Med. Sys.*, 2016 WL 1161568, at *4. Where there

24   is no evidence suggesting that foreign courts would be unreceptive to the requested discovery, the

25   second discretionary factor weighs in favor of the application.  *See In re Med. Corp. H&S*, No. 19-

26   mc-80107-SVK, 2019 WL 2299953, at *3 (N.D. Cal. May 30, 2019) (holding that the second

27   factor weighs in favor of an application when there is an absence of evidence that a foreign

28   tribunal is unreceptive to this type of discovery, or the information sought).  Anahara's Japanese

United States District Court
Northern District of California

1    attorney states that Japanese courts are receptive to this type of discovery obtained through the

2    United States judicial system.  *See* Kawamura Decl. ¶ 15.  There is no evidence in the record to

3    the contrary.  The second factor therefore weighs in favor of the application.

4         **E.    The Third Discretionary Factor**

5         The third factor considers whether the application "conceals an attempt to circumvent

6    foreign proof-gathering restrictions or other policies of a foreign country or the United States."

7    *Intel*, 542 U.S. at 265.  Where there is a "perception that an applicant has side-stepped less-than-

8    favorable discovery rules by resorting immediately to § 1782," this factor may weigh against the

9    application.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C07-5944-SC, 2013 WL 183944,

10   at *3 (N.D. Cal. Jan. 17, 2013).  Absence of evidence of attempted circumvention weighs in favor

11   of an application.  *See, e.g.*, *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *2

12   (N.D. Cal. Dec. 15, 2014); *In re Eurasian Nat. Res. Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL

13   1557167, at *3 (N.D. Cal. Mar. 30, 2018); *In re Honda*, No. 21-mc-80167-VKD, 2021 WL

14   3173210, at *4 (N.D. Cal. July 27, 2021).  There is no indication that Anahara is attempting to

15   evade any discovery rule or other policy of Japan or the United States.[1]  The Court finds that the

16   third factor weighs in favor of granting the application.

17        **F.    The Fourth Discretionary Factor**

18        The fourth factor considers whether the requested discovery is "unduly intrusive or

19   burdensome." *Intel*, 542 U.S. at 265.[2]  Requests are unduly burdensome when they are "not

20

21   [1] The Court notes that Anahara asserts that at least some aspects of the review at issue are false
     and defamatory, suggesting that the anonymous speech at issue likely would not be protected by
22   the First Amendment if made in the United States.  *See generally Milkovich v. Lorain Journal Co.*,
     497 U.S. 1, 22 (1990) (discussing the balance between the First Amendment and "the important
23   social values which underlie the law of defamation" (cleaned up)).  The Court therefore does not
     reach the question of whether "other policies of . . . the United States" underlying the First
24   Amendment could warrant denying a request under § 1782 intended to unmask an anonymous
     speaker even where the speaker, as a "foreign citizen[] outside U.S. territory," might not be
25   directly protected by the Constitution.  *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
     140 S. Ct. 2082, 2086 (2020).  This order is without prejudice to any such argument that might be
26   raised in a motion to quash.
     [2] Some courts have considered in the First Amendment and the potential chilling effect that
27   granting the request would have on anonymous speech in the context of this factor.  *See, e.g.*,
     *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-mc-80102-DMR, 2021 WL 4124216, at *3
28   (N.D. Cal. Sept. 9, 2021).  As noted above, Anahara's assertions of falsehoods in the review tend
     to ameliorate such concerns, and the Court declines to resolve this issue sua sponte, without

United States District Court
Northern District of California

1    narrowly tailored, request confidential information and appear to be a "broad fishing expedition

2    for irrelevant information." *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016).

3    The "proper scope" of requests under section 1782 is "generally determined by the Federal Rules

4    of Civil Procedure." *In re Varian Med. Sys.*, 2016 WL 1161568, at \*5.  Parties "may obtain

5    discovery that is relevant to any parties claim or defense," Fed. R. Civ. P. 26(b)(1), but "unduly

6    intrusive or burdensome requests may be rejected or trimmed."  *Intel*, 542 U.S. at 246.

7           Anahara's proposed subpoena requests all documents showing names, addresses,

8    "recovery, authentication, or ALL other" telephone numbers and email addresses, names and

9    addresses for all payment methods registered to the accounts, as well as access logs and login

10   history "for the three-month period immediately preceding March 4, 2022 and until the date that

11   you respond to this request."  App. (dkt. 1) Ex. B at 1–2.  Anahara requests this same information

12   for any other accounts affiliated with the reviewers' Google accounts, such as Google Ads

13   accounts.  *Id.*  The proposed subpoena appropriately does not seek the content of any

14   communications associated with the accounts at issue, nor does it request the users' credit card

15   numbers, expiration dates, or validation codes.  *Id.*

16          As this subpoena requests personally identifying information from an anonymous speaker,

17   it intrudes upon the privacy interests of the Google account holder.  At least some degree of such

18   intrusion is warranted, as discussed above.  Nevertheless, Anahara's request for all potentially

19   identifying information is overly broad.  The Court finds that authorizing Anahara to seek

20   information *sufficient* to identify the reviewer is appropriate, but Anahara has not shown sufficient

21   need for an all-encompassing trove of the account-holder's private information.

22          The requests for "access logs" and login history from the accounts, spanning three months

23   before the application to the date of Google's response to the subpoena, also may not be

24   adequately justified.  *See In re Hayashi Surgical Clinic*, No. 19-MC-80071-VKD, 2019 WL

25   1560461, at \*4 (N.D. Cal. Apr. 10, 2019) (finding that without justification, access logs were

26   unnecessary to identify the users behind Google reviews).  Anahara makes a sufficient case for the

27   _____

28   prejudice to addressing it on a motion to quash.

utility of acquiring IP addresses associated with the Google account, especially if the personally identifiable information provided for the account may be falsified, and for determining the times at which those IP addresses were used to access the account. *See* Kawamura Decl. ¶¶ 19–20. It is not clear, however, whether Google's "access logs" would provide additional information beyond IP addresses and times at which they were used to access the account—which appear to be the only information Anahara is concerned with obtaining from the access logs. *See* App. Ex. B.

Anahara may serve the subpoena on Google, subject to the following modifications: (1) Anahara may request only documents *sufficient to identify* all names and contact information for the Google user at issue, rather than *all* documents containing duplicative instances of that information; (2) Anahara may request only documents *sufficient to identify* each IP address used to access the account and the dates and times at which each was used during the period at issue, rather than a request for "access logs" that could be construed as requiring further information for which no specific need has been shown.

## IV.    CONCLUSION

As this application meets the statutory criteria for an order authorizing service of the proposed subpoena and the discretionary factors favor authorization of service, the Court authorizes service of the proposed subpoena on Google, subject to the above modifications.

This order is without prejudice to any argument that might be raised in a motion to quash or modify the subpoena by Google following service or by the Google account user(s) whose identifying information is sought, and the Court orders Anahara to comply with the following requirements to ensure all interested persons have an opportunity to contest the subpoena if they wish:

1. At the time of service of the subpoena, Anahara must also serve a copy of this order on Google.

2. No later than ten days after service of the subpoena and this order, Google shall notify the account user that their identifying information is sought by Anahara and shall serve a copy of this order on the account user.

3. Google and/or the account user whose identifying information is sought may, no later

1   than twenty-one days after Google provides notice to the user, file a motion in this Court

2   contesting the subpoena (including a motion to quash or modify the subpoena).

3        4. If any party contests the subpoena, Google shall preserve, but not disclose, the

4   information sought by the subpoena pending resolution of that contest.

5        5. Any information Anahara obtains pursuant to the subpoena may be used only for

6   purposes of the anticipated action in Japan, and Anahara may not release such information or use

7   it for any other purpose, absent a Court order authorizing such release or use.

8        **IT IS SO ORDERED.**

9   Dated: March 15, 2022

10

                      JOSEPH C. SPERO

11                         Chief Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

8